KINGS COUNTY RAISIN & FRUIT CO. et al. v. UNITED STATES CONSOL. SEEDED RAISIN CO.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

No. 1,835.

1. PATENTS (§ 324*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION—DISCRETION OF COURT.

The granting or refusing of a preliminary injunction in a suit for infringement of a patent ordinarily rests in the sound discretion of the trial court, and a review of its action by the appellate court is limited to the inquiry whether there was an abuse of discretion in granting the injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 606; Dec. Dig. § 324.*]

2. PATENTS (§ 54*)—ANTICIPATION—ABANDONED EXPERIMENTS—PAPER PATENT.

A patent for the first successful machine to accomplish a new and useful result is not anticipated nor limited by a mere paper patent granted many years before, although it disclosed the theory of the successful machine; such a patent having no place in the prior art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 73; Dec. Dig. § 54.*]

3. PATENTS (§ 235*)—INFRINGEMENT—COLORABLE CHANGES IN MECHANISM.

Infringement is not avoided by dividing an integral element of the patented machine into two or more distinct parts, so long as the function and operation remain substantially the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. § 235.*]

4. PATENTS (§ 176*)—CONSTRUCTION—LIMITATION BY SPECIFIC DESCRIPTION.

It does not necessarily follow, from the fact that a claim of a patent describes a specific form of construction of a machine or part, that the inventor is limited to that form; but it depends on his expressed intention and the scope of his actual invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 176.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PATENTS (§ 328\*)—INFRINGEMENT—FRUIT SEEDING MACHINE.

> The Pettit patent, No. 619,693, for a fruit seeding machine, *held* infringed, on review of an order granting a preliminary injunction.

Appeal from the Circuit Court of the United States for the Northern Division of the Southern District of California.

Suit in equity by United States Consolidated Seeded Raisin Company against the Kings County Raisin & Fruit Company and others. From an order granting a preliminary injunction, defendants appeal. Affirmed.

Frederick S. Lyon, for appellants.

John H. Miller and Wm. K. White, for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The appeal in this case is taken from an order granting a preliminary injunction. The appellee brought a suit against the appellants to restrain the infringement of letters patent No. 619,693, issued February 14, 1899, for "fruit seeding machine," designated in the record "the Pettit patent." The bill, among other things, alleges the prior adjudication of the validity of the Pettit patent in numerous suits instituted by the appellee in the court below. The application for the preliminary injunction came on to be heard upon the bill, the affidavits of the president and secretary of the appellee, and a notice that the appellee would rely also upon the records in three other mentioned suits for the infringement of the patent in the lower court, in each of which, on final hearing, the Pettit patent had been adjudged valid. In opposing the application the appellants relied on an affidavit of W. C. Anderson, president of the Anderson Barngrover Manufacturing Company, the corporation which had manufactured the raisin seeding machines which were alleged to infringe the Pettit patent, and they opposed the granting of the injunction solely upon the ground of noninfringement.

The granting or refusing of a preliminary injunction in such a suit ordinarily rests in the sound discretion of the trial court, and the review thereof by an appellate court is limited to the inquiry whether there was abuse of discretion in granting the writ. This rule has been so often applied by this court, and is so well established by precedent, as to require the citation of no authorities. It is sufficient to refer to the language of Judge Jackson in Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur et al., 53 Fed. 98, 3 C. C. A. 455:

> "The object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined upon strictly legal proofs and according to the course and principles of courts of equity. The prerequisites to the allowance and issuance of such injunction are that the party applying for the same must generally present a clear title, or one free from reasonable doubt, and set forth acts done or threatened by the defendant which will seriously or irreparably injure his rights under such title unless restrained."

See, also, the decision of this court in Jensen Can-Filling Machine Co. v. Norton, 64 Fed. 662, 12 C. C. A. 608, and Southern Pacific Co. v. Earl, 82 Fed. 690, 27 C. C. A. 185.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is held that, to entitle the complainant to a preliminary injunction in a suit for the infringement of a patent prior to a trial on the merits, he must show three things: First, a clear title to the patent; second, its presumptive validity; and, third, threatened infringement by the defendant. Edison Electric Light Co. v. Beacon Vacuum Pump & Electrical Co. (C. C.) 54 Fed. 679, and Norton v. Eagle Automatic Can Co. (C. C.) 57 Fed. 929. In the case last cited, Judge Hawley said:

"I understand the rule to be well settled that where the validity of a patent has been sustained, as in this case, by prior adjudication in the same circuit, the only question open before the court on motion for a preliminary injunction, in a subsequent suit against other parties, is the question of infringement, and that the consideration of all other questions should be postponed until all of the testimony is taken in the case and the case is presented upon final hearing. There is, perhaps, an exception to this rule— that in cases where new evidence is presented that is itself of such a conclusive character that, if it had been presented in the former case, it would probably have led to a different conclusion. The burden, however, of showing this, is upon the respondent."

In the present case the bill alleged that the validity of the Pettit patent had been sustained by the court below in three certain suits, in each of which the whole prior art was considered and expert witnesses were examined. There was no new evidence affecting the validity of the patent presented on the hearing of the application for the injunction. The sole question before this court, therefore, is whether the evidence as to infringement was such that the court below abused discretion in granting the injunction.

The appellants contend that, in view of the prior art, the claims and specifications of the Pettit patent, and the marked difference between their machine and that which is described therein, there was no infringement. Claim 17 of the Pettit patent, which was held by the lower court to have been infringed by the appellants, reads as follows:

"A machine for seeding fruit, comprising a cylindrical carrier composed of thin plates of two constructions arranged alternately, the plates of one construction having long teeth spaced apart circumferentially so as to exclude the seeds of the fruit, and the plates of the other construction being of smaller diameter and smooth circular contour and of such thickness as to exclude the seeds of the raisins, pressing means for impaling the fruit on such teeth, a seed stripping device, and a fruit stripping device, substantially as set forth."

The elements of the claim are a built-up cylinder, with its rows of impaling teeth, a rubber pressure roll or cylinder turning toward the same at the same surface velocity, a seed stripping device, and a fruit stripping device. Its operation is as follows: The raisins are fed to the top of the toothed cylinder. As the cylinder rotates, the raisins come against the rubber roll and are impaled on the points of the impaling teeth. These teeth are so spaced as to exclude the seeds of the raisins. The pulp of the raisin is pressed down below the points of the teeth, and the seeds are forced to the opposite side and through the skin of the raisin, so that, after passing the rubber roll, the pulp of the raisins is imbedded below the points of the teeth, while the seeds are left on the points thereof. The seed stripper removes the seeds from the points, and then the fruit strippers, consisting of long, slender steel blades extending between the rows of the impaling teeth, remove the

raisins from the teeth. In the appellant's machine the elements of the combination are the same as in the Pettit, but there is a difference in the construction of the built-up impaling roll. The construction of the Pettit roll is described in claim 17 above quoted. The appellant's cylinder is built up on a cylinder core, with sets of corrugated annular plates mounted thereon, with two plates of each set forming between them when pressed together recesses for the impaling teeth, into which the teeth are inserted and held in place. Each set of two plates, together with the teeth held between them, forms the tooth disk or plate, and is equivalent in function to the disk or plate of the Pettit patent. Interposed between each two adjacent sets of said plates, to space them apart, is a corrugated annular plate of smooth circular contour, the diameter of which is smaller than that of the two plates which hold the teeth. In brief, the difference between the Pettit built-up cylinder and that of the appellants is that in the former the disk is stamped out of a single piece of metal, whereas in the latter it is constructed of three parts.

It is earnestly contended on behalf of the appellants that the Pettit machine must be limited to the precise form described in the letters patent, and this contention is mainly based upon the prior art as shown by the Crosby patent, in which it is contended are described all the elements of the Pettit invention. The Crosby patent, No. 56,721, for an improved raisin seeder was issued July 31, 1866. The specifications describe a machine which operates by impaling the fruit upon a "number of wires placed so closely together that, while the pulp of the fruit is forced upon the wires, the seeds, being hard and of too great size to enter the space between the wires, remain at the projecting ends thereof, and are thus thrust through the skin of the fruit"; and they describe a series of strippers between the rows of teeth to remove the impaled pulp and a pressure roll composed of elastic material, "preferably rubber," revolving toward the other cylinder with the same surface velocity, and a scraper for removing the seed from the ends of the wires. The Crosby invention undoubtedly anticipates and describes the whole theory of the Pettit patent; but it does not appear ever to have been put to use, and there is no evidence that any machine was ever constructed under it. It is one thing to invent the theory of a machine. It is quite another thing to invent a successfully operating machine. A third of a century passed between the date of that patent and the date of the Pettit patent, and in that time the evidence is conclusive that raisin seeding was done by hand, and that seeding by machinery was an unknown art. The Pettit machine was the first to go into use, and it went into very extensive and successful use. Nor does it appear from the specifications of the Crosby patent in what manner or of what material the impaling roll was to be constructed. All that is said is that the wires are set in the cylinder, and are arranged at uniform distances apart, and in regular rows around it. How the wires are set in the cylinder, or are otherwise attached thereto, does not appear. Probably the difficulty of attaching wires to the cylinder was the obstacle which prevented the manufacture of machines under the patent. Just what is meant to be described by "wires" is not made clear. Ordinary wires of the requisite caliber would obviously be un-

fit for the designed purpose. They would not meet the strain and pressure to which the teeth of an impaling roll are subjected.

It is probably unnecessary, on this appeal, to determine just what effect should be given to the Crosby patent as limiting the scope of the Pettit invention. It would seem that it was one of those unsuccessful and abandoned inventions which are held to have no place in the art to which they relate. In an analogous case, Mr. Justice Brown said:

"His efforts in that direction must be relegated to the class of unsuccessful and abandoned experiments, which, as we have repeatedly held, do not affect the validity of a subsequent patent." Deering v. Winona Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 124, 39 L. Ed. 153.

In any view, the Pettit machine being the first successful machine to accomplish a new result, the claims of the patent are clearly entitled to a broad and liberal construction, and to the benefit of the doctrine of equivalents. Pettit was not only the first to invent a built-up impaling cylinder, but he was the first to invent and construct a raisin seeding machine embodying the principle upon which all such machines must necessarily operate. Infringement is not avoided by the fact that one of the integral elements of his built-up impaling roll is by the appellants separated into two or more distinct parts, so long as the function and operation remain substantially the same. Kalamazoo Ry. Supply Co. v. Duff Mfg. Co., 113 Fed. 264, 51 C. C. A. 221; Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 36 C. C. A. 375; H. F. Brammer Mfg. Co. v. Witte Hardware Co., 159 Fed. 726, 86 C. C. A. 202.

We find no merit in the contention that by the specific language of claim 17 of the patent the Pettit invention is limited to the precise form there described, and that the patentee is limited to the identical plates shown in the patent drawings as stamped out of a single piece of metal. Section 4888 of the Revised Statutes (U. S. Comp. St. 1901, p. 3383) requires that the inventor shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. This statute was complied with in the present case. It does not necessarily follow, from the fact that the claim describes a specific form of construction, that the inventor shall be limited to that form. All depends on his expressed intention, and the scope of the actual invention which he has made. If his improvement is but a narrow one, or if he has used language such as clearly to show his intention to limit his invention to a particular form described, then he is held to the language of his claim, and limited to that specific form. But if his is a pioneer invention, or one of such merit as to be entitled to a liberal construction, the claim will not be thus limited, even if couched in specific language, unless the inventor has also shown his positive intention to relinquish to the public all other forms in which his invention might be embodied. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Western Electric Co. v. LaRue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294; Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609.

In McCormick Harvester Co. v. Aultman, 69 Fed. 371, 393, 16 C. C. A. 259, 281, Judge Taft said:

"Whether he specifically claims in his patent the benefit of equivalents or not, the law allows them to him according to the nature of his patent."

Not only is there nothing in the specifications or claims to indicate that Pettit intended to limit his claims to the precise form described, but the contrary is indicated by the terms of claim 18, and by the language of the specifications, in which it is said that:

"Various modifications may be made in the construction shown in the drawings and above particularly described, within the purview of my invention."

The order is affirmed.