SCHICK DRY SHAVER, Inc., et al. v.
NICHOLL, Inc.

No. 1273-C.

District Court, S. D. California,
Central Division.

Dec. 14, 1937.

William Gibbs McAdoo, of Los Angeles, Cal., Abraham Tulin and Drury W. Cooper, both of New York City, and E. Walter Guthrie, of Los Angeles, Cal., for plaintiffs.

Lyon & Lyon, by Henry S. Richmond, all of Los Angeles, Cal., and Jesse Curtis, Jr., of San Bernardino, Cal., for defendant.

**McCORMICK, District Judge.**

On October 27, 1937, complainants filed a bill of complaint in equity against the defendant for the infringement of two patents, namely, No. 1,721,530 issued July 23, 1929, upon an application filed March 31, 1928, and No. 1,757,978 issued May 13, 1930, upon an application filed April 23, 1928. Both grants are to Jacob Schick and are for a shaving implement and shaving machine respectively.

The first and second named complainants are the exclusive licensee and the owner of the patents in suit, respectively, and the last named is the sole distributor throughout the State of California of the "Schick Dry Shaver," a device which embodies the inventions of the two patents.

The defendant Nicholl, Inc., is a corporation having a regular and established place of business in Los Angeles, California, within the jurisdiction of this court, where it has manufactured, offered for sale, and sold dry shaving devices under the name of "Nicholl Velvet Shaver," which complainants aver to be infringement of each of the two patents in suit.

The immediate issue before the court is an application for preliminary injunction against defendant to restrain it pendente lite from directly or indirectly infringing the earlier of the two patents, to wit, No. 1,721,530.

The proceeding is based upon the allegations of the verified bill of complaint and supporting affidavits simultaneously filed, upon which an order to show cause was issued. Upon the return day defendant filed responsive affidavits, and without objection complainants later filed further affidavits answering new matter brought in by defendant on its response to the order to show cause. The issue has been extensively argued by the solicitors for each side and is submitted for decision upon the entire record. There are also in evidence exemplars of the different types of defendant's shaving devices which complainants claim are infringements.

Neither the title of complainants to the patent involved in this proceeding nor the right of complainants to sue for its infringement is disputed. The validity of the patent has been adjudged in a contested infringement suit in the District Court for the Eastern District of New York, Schick Dry Shaver v. Dictograph Products Co., 16 F.Supp. 936, and upon appeal from the final decree of such court in the Second Circuit Court of Appeals, Schick Dry Shaver v. Dictograph Products Co., 89 F.2d 643. These two courts sustained claims 1 and 13 of the patent as valid, and before reaching such findings examined the entire field of the art in question, both in the United States and abroad. The three judges of the appellate court were unanimous on the decision that the patent and the two mentioned claims thereof constituted meritorious invention and substantially advanced the art of dry shaving, but divided as to the scope or breadth which these claims should be given, two holding that solely because of an earlier British patent, No. 753, issued to Appleyard in 1914, for improvements in shaving or hair cutting appliances, the claims should be narrowed, while the third judge dissented and attributed to the Schick improvement an invention having pioneer characteristics under Eibel Process Co. v. Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523, and Kings County Raisin & Fruit Co. v. United States Consolidated Seeded Raisin Co., 9 Cir., 182 F. 59, 62, and the claims therefore entitled to liberal treatment in order that the improver might enjoy fully the fruits of his discovery. See Schick Dry Shaver, Inc., et al. v. Dictograph Products Co., D.C.N.Y., 16 F.S. 936; Id., 2 Cir., 89 F.2d 643, 646; Id., 33 U.S.P.Q. 350.

This patent has been considered by this court in a suit in equity [No. 1274-(J) M], 21 F.Supp. 722, wherein there is indicated our independent belief as to the effect the Appleyard patent should be given in the dry shaving art in considering the Schick invention and in ascertaining from its clear claims the extent of protection that Schick should enjoy in order to secure the benefits and advantages which his discovery warrants.

It is our view that while both Appleyard's and Schick's patents can be considered as adaptations of the old principle used in hair clippers, that is the only feature that is common to both disclosures. The difference is not merely one of degree, but lies in construction, mode of operation, and results.

Schick, according to the record before us, is shown to have substantially advanced the art over all, including Appleyard, by specifying, claiming, and manufacturing a new, practical, and efficient latherless or dry shaving implement which has brought about unprecedented commercial success in

the tonsorial art. The fact that for the fifteen years between Appleyard's disclosures and Schick's patent no one had been able to make or market a successful dry shaver, to my mind places Schick in the category of a pioneer inventor. Eibel Process Co. v. Paper Co., supra.

This revolutionary accomplishment by Schick we believe is similar to that of the inventor Smith whose broad patent claims had been restricted in certain lower courts by language contained in his patent specifications, and where the Supreme Court, in Smith v. Snow, 294 U.S. 1, 14, 55 S.Ct. 279, 284, 79 L.Ed. 721, in holding otherwise, said: "If the matter were doubtful, it is plain from what has been said that the character of the patent and its commercial and practical success are such as to entitle the inventor to broad claims and to a liberal construction of those which he has made. Moreley Machine Co. v. Lancaster, 129 U.S. 263, 273–277, 9 S.Ct. 299, 32 L.Ed. 715; Eibel Process Co. v. Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523; Winans v. Denmead, supra [15 How. 330, at page 341, 14 L.Ed. 717]. In such circumstances, if the claim were fairly susceptible of two constructions, that should be adopted which will secure to the patentee his actual invention, rather than to adopt a construction fatal to the grant, Keystone Manufacturing Co. v. Adams, 151 U.S. 139, 144, 145, 14 S.Ct. 295, 38 L.Ed. 103; McClain v. Ortmayer, 141 U.S. 419, 425, 12 S. Ct. 76, 35 L.Ed. 800."

But entirely aside from the effect which we think Appleyard's accomplishments and teachings had on Schick's admittedly meritorious improvement, it is clear that under the construction of the Schick patent found in the majority and controlling opinion of the Circuit Court of Appeals in New York, the "Nicholl Velvet Shavers" are unquestionably shown by the record here to be infringements of Schick's patent, No. 1,721,530.

No new evidence in addition to that which is shown to have been before the Circuit Court of Appeals affecting the validity of the Schick patent under present consideration having been submitted, the sole question for decision is whether or not the "Nicholl Velvet Shavers" that have been analytically and critically described by expert witnesses for each side and that have been physically introduced in evidence have been clearly shown to infringe either claim 1 or claim 13 of Schick patent, No. 1,721,530, as such patent and claims have been construed by the Circuit Court of Appeals. Kings County Raisin & Fruit Co. v. United States Consolidated Seeded Raisin Co., 9 Cir., supra.

Before comparing the defendant's shaver with the patent, some equities that have been shown by the record should be noted. They illumine the respective positions of the suitors before the court at this time.

Until Schick's invention in 1929 there had never been commercially produced or marketed a practical and workable dry shaver. The popularity and success of this new and useful instrumentality of comfort and personal convenience is reflected in the growth of commercial production and sales from 3,200 Schick shavers in 1931–1932 to more than 722,000 Schick shavers in the calendar year 1936; the total number of shavers sold by the Schick Company since 1931 to the time of the filing of this suit in October, 1937, being approximately 1,500,000. Since the introduction of the dry shaver of complainants on the Pacific Coast, sales have increased yearly from a low of 5,610 in the calendar year 1933 to a high of over 164,000 in 1936. The retail sales in this area have aggregated approximately $4,000,000, and have been sold by about 7,500 retail dealers. This business has been built up at a cost of approximately $400,000 for advertising, education, and sales promotion in the Pacific Coast area.

The greatest and most profitable market for the devices that embody the inventions described in the patent is in the last three months of the year, on account of the adaptability of the shaver as a holiday gift. It has been the experience that since 1931 more than 50 per cent. of the sales of complainants' product are made in October, November, and December. In order to maintain its manufacturing and sales force of about 1,450 persons, it will be necessary to supply a normal consumptive market for complainants' product, and a vigorous advertising and selling campaign launched by defendant threatens to affect seriously the sale of complainants' product and the patent rights of complainants.

The complainants, observing that sales of the "Schick Shaver" had fallen off in 1937 from what they were in 1936, attributed such loss of business in part to

defendant's advertising and sales campaign of the "Nicholl Velvet Shaver," and upon the defendant's extension of its campaign into the eastern part of the United States in June or July of 1937, complainants brought suit against defendant and its distributor and dealer for infringement of patents in the United States District Court for the Southern District of New York, but being unable to effect service upon the defendant Nicholl, Inc., was able to proceed only against the other defendants.

During the pendency of the suit and as a compromise of litigation, the defendant Nicholl, Inc., through its local New York attorney, negotiated without success with complainants' attorney for a license from complainants under the patents in suit. The suit was not defended by Nicholl, Inc., and the case proceeded to a consent decree of infringement against the distributor and dealer of the "Nicholl Velvet Shaver" in New York.

The defendant has been manufacturing and selling "Nicholl Velvet Shavers" since about July 1, 1936. It changed its type or model of device in July, 1937, since which time it has manufactured for sale only the so-called "Model M Shaver."

It has expended or incurred expense in advertising its devices since its organization in 1936 approximately $80,000. These advertisements, contracted for prior to the filing of this suit, appear in trade journals, magazines, and daily newspapers throughout the country, and will continue, under the contracts already made and uncancellable, to appear until December 15, 1937.

The defendant has its factory in Los Angeles, California, where it employs 89 persons and has organized a sales force of 125 salesmen. It has increased its production from about ten complete "Nicholl Velvet Shavers" per day to a present output of over four hundred "Shavers" per day.

The retail price of the defendant's shaving device is $17.50, as against $15 for the patented Schick shaver, but because of volume purchase inducements offered to dealers by the defendant that are not made by the complainants, a larger retail profit from sales to the public results from selling the defendant's product than from the patented article.

In the box containing the defendant's shaver for delivery to purchasers, defendant also deposits a small "pamphlet" of instructions for using its device. This printed matter is apparently copied, in many instances, literally from a "booklet" of instructions which has accompanied sales of the Schick patented shaver.

The respective equities have been weighed and considered, and as we think the requirements of the rule applicable to preliminary injunctions in patent infringement suits in the Ninth Circuit have all been clearly met, we find no reason to withhold from complainants timely and adequate protection to their patent rights or to require them to submit to continued infringements and trespass until this suit can be heard on the merits. See Kings County Raisin & Fruit Co. v. United States Consolidated Seeded Raisin Co., 9 Cir., supra.

The Schick shaver may be generally described as a device or machine having three parts or elements: The handle or case containing the electric motor equipment for actuating the shaving elements, and the two detachable shearing or shaving elements, consisting of an outer member or shear plate and an inner reciprocating member or cutter. Each of the two shaving elements assume, when operatively assembled, the shape of an inverted "U" having slots extending from side to side on the closed end of the inverted "U." The closed end in the inverted "U" is generally more nearly square than rounded, although the patent does not restrict the assembly to any specific form. The two cutting members are extremely thin, the outer one being supported against flexing during operation by the extent of the inner cutter. This shearing assembly is detachably placed in the handle and is made operative by means actuated by the electric motor equipment. As we are primarily concerned at this time with the head assembly or shearing elements of the Schick patent and the "Nicholl Velvet Shavers," there is no need to further discuss or consider the connecting means in the handle or case of the machines which moves the reciprocating inner cutter for shaving operation. The different types or models of "Nicholl Velvet Shavers" and the patented Schick shaver are actuated, held intact, and made operable through the handle by substantially the same means, in substantially

the same way and accomplish substantially the same result.

Mr. Schick stated the object of his invention at the commencement of his specifications as follows:

"This invention relates to an improved shaving implement that has a shear plate that rests against the face and has a cutter operating under the plate to cut the hairs. The machine can be used for shaving without the use of lather.

"The invention comprises an implement in which the shearing takes place practically on the surface of the skin as the shearing plate or its equivalent is extremely thin. The thin plate is held in place against flexing and collapsing under inward pressure by the cutter which is disposed inside the shearing plate to co-operate with it in shearing and to support it against flexing."

He also stated:

"The device is constructed to present a shear plate for movement along the skin, which plate has slots with both ends open. This form, therefore, provides a plate with no defined front or back but which can be moved back and forth across the skin and can, therefore, rest close to the skin and the hairs that are still uncut and in the slots do not raise the device out of close contact with the skin. This allows a very close shave to be accomplished. The inside cutter that operates across these slots and transverse relative to the direction of movement of the machine cuts across the edges of the slots to sever the hair, the slots being close together to form a series of narrow teeth which are prevented from moving inwardly by the support given by the inside cutter, which cutter has its teeth arranged on the end as differentiated from prior cutting devices in which the movable cutters have the teeth operating alongside the shear plate."

It will thus be observed that Schick in his specifications provided a very thin shear plate having slots extending from side to side, making each side so like the other that the plate had "no defined front or back," the plate serving throughout its width as one side of the shearing means co-operating with a cutter bar inside that completed the cutting means and also supported the thin shear plate to prevent flexing. He also showed that this construction was different from the prior art in that the cutter "has its teeth arranged on the end" instead of "operating alongside the shear plate." This innovation produced

"end cutting" which is a chief inventive quality of the invention.

The approved method of use of the "Shaver" is to move the shear plate manually across the surface to be shaved. Hairs which enter the slots will immediately be clipped off because of the rapid reciprocating motion of the cutter bar.

The two claims which were validated by the Circuit Court of Appeals are claims 1 and 13.

The former reads: "1. A shaving implement comprising a shearing plate of extreme thinness to rest against the skin, having an opening for the reception of hair, a cutter to travel across the opening to provide a shear cut with one side of the opening, and means for holding the parts to insure the supporting of the plate against flexing by means of the cutter."

Claim 13 is as follows: "13. A shaving implement comprising a shear-plate with slots extending from side to side, a cutter under the plate and having teeth to co-operate with the edges of the slots in cutting, and means for operating the cutter transversely of the slots."

Our consideration of the patent, with the limitations imposed by the appellate court decision in the New York case, does not enable us to say to the present required degree of positiveness that the defendant's shavers infringe claim 1, and we refrain from any further expression at this time as to the readability of this claim upon the "Nicholl Velvet Shavers," further than to state that it is only in the preferred form of device that it is intended to have the inner cutter support the shear plate throughout.

But we are convinced beyond all reasonable doubt that all of the types of the "Nicholl Velvet Shavers" introduced in evidence are clear infringements of claim 13 of Schick patent, No. 1,721,530.

An outstanding inventive feature of Schick's patent, to the mind of the Second Circuit Court of Appeals, lies in introducing end shearing instead of the old clipper edge cutting. This belief is epitomized by the controlling opinion in the following statement: "Claim 13 was allowable over Appleyard in that it was tied to 'a shear plate with slots extending from side to side' of the plate. This was the new feature that brought about end cutting that was wholly absent in Appleyard."

The defendant's solicitor argues that notwithstanding this pronouncement by the

appellate tribunal "there, is no such thing as end cutting." Of course if there is no premise for this far-reaching judicial conclusion, we would be justified in rejecting the decision of a court of superior authority and accepting learned counsel's contrariwise declaration. We think, however, that Circuit Judge Chase's analysis of the Schick patent, his thorough examination of the entire prior art, and the fact that all earlier hair clipping machines, including that suggested by Appleyard, provided a shearing head wherein the construction and mode of operation precluded shaving and cut the hairs only on a single line and not throughout the entire width of slotted face-engaging surfaces, logically leads to the conclusion of the Circuit Court of Appeals. And moreover, when consideration is given to the undisputed fact shown by the record before us, that the Schick invention enjoyed the commercial field without competition and with great success until 1935, the conclusion stated by Schick in his patent as follows:

"In these various modifications the ends of the teeth are flat so as to give a maximum surface bearing against the inner faces of the blades 13. The blades 13 are made of extremely hard material to form a series of keen cutting edges and when the end of the shaving head is passed over the face a close comfortable shave is accomplished.

"In shaving devices that are to be used on long hair, such as in clipping as distinguished from shaving the blade of course is made of material thickness and can support itself. The use of a relatively thin plate with a cutter operating under it and offering the easy adjustment possible in this case is novel. The old fashioned clipper is cumbersome and forms such a broad and deep surface that it cannot be used to clip with comfort in recessed places or where obstructions are offered".

is irresistible and establishes beyond reasonable doubt the pioneer aspect of Schick's patent and the unquestionably novel and inventive characteristics of claim 13 thereof. See Stebler v. Riverside Heights Orange Growers' Ass'n, 9 Cir., 205 F. 735.

We have earlier in this opinion adverted to a model change which the defendant made in its "Nicholl Velvet Shaver" about the time of the New York infringement litigation between the parties to this suit. We think it cannot be contended that the older type of defendant's shaving device is not a palpable and bold infringement of the Schick patent and of claim 13 thereof. The later model, described as "Model M" in the record, is not so obvious a trespass upon Schick's invention, but upon scrutiny appears to be an ingenious but clear invasion of the rights protected by claim 13 as construed by the Court of Appeals.

The apparent modification of July, 1937, as far as our present inquiry goes, pertains to the extent to which the slots run across the shear plate. In the older type the slots extended from the apex to the edges and over them as grooves into the supporting walls. In the new model, while to the unaided eye the slots in the outer member or shear plate seem to terminate before reaching the edges, upon microscopic examination with measuring instruments of precision the apparent termination of the slots is illusory and really the slots do extend across the actual shear plate from apex to the inside of the supporting wall. This in no manner eliminated the appropriated feature of having an actual shear plate with slots extending from side to side.

In connection with the proper construction that should be given to claim 13 under the decision of the Circuit Court of Appeals, it is significant that the "Packard Shaver" which was under consideration in that court, as well as the "Remington Shaver" which was involved in the recent proceeding before the District Court in Connecticut, Schick Dry Shaver v. General Shaver Corporation, 21 F.Supp. 718, to which our attention has been directed since the submission of the arguments herein, are each cylindrical and both have central longitudinal interruptions which divide the two planes of slots in the cylindrical shear plate. There is no equivalent to this long central break in the slots in the shear plates of any of defendant's devices, nor are the tapered cutting teeth assemblies in the "Packard" to be found in defendant's shavers.

With the exception as to extent of the slots in the different models, the "Nicholl Velvet Shavers" may be substantially described as follows:

The shearing head assembly is constructed in an inverted "V" shape. There are two cutting members sloping irregularly downward on each side of the apex: One, a thin (as defined by the Circuit Court of Appeals) outer cutter or shear plate, is slotted from side to side, also

over the apex; the other, an inner cutter, also has an inverted V-shaped end which is flattened at the point which in assembly is directly under the apex of the outer member. This inner member slides and is positioned under the plate and has slotted teeth which co-operate with the nether edges of the slots in the shear plate, and is actuated by means of a jigger which is connected to the motor equipment in the handle and is electrically very rapidly operated transversely of the slots. The shearing head assembly is mounted in the handle for operation in substantially the same manner as shown in the Schick patent and the shaving action occurs in substantially the same way as described by Schick, the only difference being that Nicholl does, as Motoshaver does in the shaver that was considered by this court in 1274–(J)M, actually and practically have two shearing heads each containing all of the elements and requirements of claim 13 by reason of the inverted "V" shape of Nicholl's devices.

This duplication does not avoid infringement. Kings County Raisin & Fruit Co. v. United States Consolidated Seeded Raisin Co., 9 Cir., supra; Standard Caster & Wheel Co. v. Caster Socket Co., 6 Cir., 113 F. 162; Hawkinson v. Skogmo-Gamble, D.C.Minn., 35 U.S.P.Q. 175.

We conclude by holding that all types of "Nicholl Velvet Shavers" in evidence and that are referred to in the arguments as Exhibits X and Y, respectively, have been clearly shown beyond reasonable doubt to infringe claim 13 of patent No. 1,721,530 to Jacob Schick for shaving machine, and that complainants are entitled to a preliminary injunction restraining defendant Nicholl, Inc., a corporation, its officers, agents, servants, employees, and attorneys, from directly or indirectly manufacturing; selling, advertising, or offering for sale any shaving implement which embodies the invention of said patent, and particularly either directly or indirectly manufacturing, selling, advertising, or offering for sale its shaving devices known as "Nicholl Velvet Shaver" or "Nicholl Velvet Shaver, Model M."

This memorandum opinion is adopted as the findings of fact and conclusions of law of this court in this proceeding for preliminary injunction pursuant to Equity Rule 70½, 28 U.S.C.A. following section 723. National Reserve Insurance Co. v. Scudder, 9 Cir., 71 F.2d 884, 888.