## NICHOLL, Inc., v. SCHICK DRY SHAVER, Inc., et al.

### No. 8769.

Circuit Court of Appeals, Ninth Circuit.

Aug. 11, 1938.

Lyon & Lyon, Frederick S. Lyon, Leonard S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., and Jesse W. Curtis, Jr., of San Bernardino, Cal., for appellant.

William Gibbs McAdoo, of Los Angeles, Cal., and Abraham Tulin, of New York City, for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

This is an appeal from an interlocutory order which, in a patent infringement suit brought by appellees, Schick Dry Shaver, Incorporated, Schick Industries, Limited, and Edises, Incorporated, in the District Court of the United States for the Southern District of California against appellant, Nicholl, Incorporated, an inhabitant of that district, enjoined appellant, pendente lite, from manufacturing, selling, advertising or offering for sale any shaving implement embodying the invention covered by patent No. 1,721,530[1] and, particularly, the Nicholl Velvet Shaver or the Nicholl Velvet Shaver, Model M.

The sole question is whether, in granting the injunction, the District Court abused its discretion. If not, the order should be affirmed. Kings County Raisin & Fruit Co. v. United States Consolidated Seeded Raisin Co., 9 Cir., 182 F. 59, 60.

The patent was issued to Jacob Schick on July 23, 1929, and was by him assigned to one Baker, who in turn assigned it to Schick Industries, Limited, of which Schick Dry Shaver, Incorporated, is, in the United States, the sole licensee. Edises, Incorporated, is a sublicensee of Schick Dry Shaver, Incorporated. The title of appellees, as owner, licensee and sublicensee, respectively, is not questioned.

[1] Patent No. 1,757,978, also alleged to have been infringed, is not here involved.

The specifications state:

"This invention relates to an improved shaving implement that has a shear plate that rests against the face and has a cutter operating under the plate to cut the hairs. The machine can be used for shaving without the use of lather.

"The invention comprises an implement in which the shearing action takes place practically on the surface of the skin as the shearing plate or its equivalent is extremely thin. The thin plate is held in place against flexing and collapsing under inward pressure by the cutter which is disposed inside the shearing plate to co-operate with it in shearing and to support it against flexing.

\* \* \* \* \*

"The device is constructed to present a shear plate for movement along the skin, which plate has slots with both ends open. This form therefore provides a plate with no defined front or back but which can be moved back and forth across the skin and can therefore rest close to the skin and the hairs that are still uncut and in the slots do not raise the device out of close contact with the skin. This allows a very close shave to be accomplished. The inside cutter that operates across these slots and transverse relative to the direction of movement of the machine cuts across the edges of the slots to sever the hair, the slots being close together to form a series of narrow teeth which are prevented from moving inwardly by the support given by the inside cutter, which cutter has its teeth arranged on the end as differentiated from prior cutting devices in which the movable cutters have the teeth operating alongside the shear plate."

The patent contains 21 claims, of which only claims 1 and 13 are here involved. They are as follows:

"1. A shaving implement comprising a shearing plate of extreme thinness to rest against the skin, having an opening for the reception of hair, a cutter to travel across the opening to provide a shear cut with one edge of the opening, and means for holding the parts to insure the supporting of the plate against flexing by means of the cutter."

"13. A shaving implement comprising a shear-plate with slots extending from side to side, a cutter under the plate and having teeth to co-operate with the edges of the slots in cutting, and means for operating the cutter transversely of the slots."[1]

Claims 1 and 13 were construed and, as construed, were held valid by the Circuit Court of Appeals for the Second Circuit in Schick Dry Shaver v. Dictograph Products Co., 2 Cir., 89 F.2d 643, decided April 12, 1937. They do not appear to have been considered or passed on by any other appellate court. In the Dictograph Case, as in this case, it was argued by defendant that British patent No. 753, issued to one Appleyard in 1914, was a complete anticipation of Schick. The court said (pages 645, 646):

"We are not now concerned with how much Schick took from Appleyard except in so far as that helps determine whether Schick disclosed and covered in the claims in the suit something patentable either by itself or in combination with what was old. The importance of Appleyard's patent in this connection lies only in the fact that it embodies for present purposes everything material that was old. \* \* \* So it is enough on validity if Schick, regardless of how much he may have taken from Appleyard, made one or more patentable improvements which he disclosed and covered in his claims in suit. We think he did just that at least in (1) providing the shear plate throughout of extreme thinness; having (2) slots extending all the way across from edge to edge; and (3) a cutter bar supporting the shear plate, throughout its entire width, against flexing. \* \* \*

\* \* \* \* \* \*

"Claim 1 calls for extreme thinness in the shear plate without otherwise defining more definitely the degree of thinness. But that is not fatal. The claim is to be read in connection with the disclosure of the specifications and given of permissible meanings the one which will fairly and reasonably be supported both by the language used and by the scope of the actual invention disclosed. \* \* \* So this claim is to be read to mean thinness of shear plate sufficient to provide the desired closeness of shave and the support from flexing to whatever extent such thinness requires.

"\* \* \* \* \*

"Claim 13 was allowable over Appleyard in that it was tied to a 'shear plate with slots extending from side to side' of the plate. This was the new feature that brought about end cutting that was wholly absent in Appleyard. And so we hold both claims valid.

"But as validity of these claims is dependent upon the rather slight amount of their departure from what Appleyard dis-

closed so must infringement. be proved, if proved at all, within such narrow limits."

As thus narrowly construed, claims 1 and 13 were held not infringed by the device (Packard Lektro Shaver) complained of in the Dictograph Case. That device is not involved in this case, nor did the Dictograph Case involve either of the devices (Nicholl Velvet Shaver or Nicholl Velvet Shaver, Model M) here complained of.

This suit was commenced on October 27, 1937. The application for an injunction pendente lite was heard on November 8, 1937. At that time, no answer had been filed by appellant. The application was heard on appellees' verified bill of complaint, five supporting affidavits filed by appellees and four opposing affidavits filed by appellant. The court also had before it, as exhibits, a copy of the patent and exemplars of the two types of Nicholl Velvet Shaver which, appellees allege, infringe claims 1 and 13 thereof. Having considered this evidence, the court filed a written opinion (D.C., 21 F.Supp. 731) which, after citing and discussing the Dictograph Case, states (page 733):

"* * * [It] is clear that under the construction of the Schick patent found in the majority and controlling opinion of the Circuit Court of Appeals in [the Dictograph Case], the 'Nicholl Velvet Shavers' are unquestionably shown by the record here to be infringements of Schick's patent, No. 1,721,530.

"No new evidence in addition to that which is shown to have been before the Circuit Court of Appeals [in the Dictograph Case] affecting the validity of the Schick patent under present consideration having been submitted, the sole question for decision is whether or not the 'Nicholl Velvet Shavers' that have been analytically and critically described by expert witnesses for each side and that have been physically introduced in evidence have been clearly shown to infringe either claim 1 or claim 13 of Schick patent, No. 1,721,530 as such patent and claims have been construed by the Circuit Court of Appeals.

"* * * * *

"Our consideration of the patent, with the limitations imposed by the appellate court decision in the [Dictograph] Case, does not enable us to say to the present required degree of positiveness that the defendant's shavers infringe claim 1 * * *.

"But we are convinced beyond all reasonable doubt that all of the types of the 'Nicholl Velvet Shavers' introduced in evidence are clear infringements of claim 13 of the Schick patent, No. 1,721,530."

It will be noted that, as to the construction and validity of the claims in suit, the District Court, in passing on the application for an interlocutory injunction, was governed by the decision in the Dictograph Case. That decision, since we find no controlling reason for disregarding it, will be given the same weight on this appeal, though hereafter, on appeal from a final decree, we may reach a different conclusion. American Paper Pail & Box Co. v. National Folding Box & Paper Co., 2 Cir., 51 F. 229, 231; Consolidated Fastener Co. v. Littauer, 2 Cir., 84 F. 164; Duplex Printing-Press Co. v. Campell Printing-Press & Mfg. Co., 6 Cir., 69 F. 250, 252; Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 80 F. 712, 730.

The question of infringement was in this case, as it usually is a question of fact. Reinharts v. Caterpillar Tractor Co., 9 Cir., 85 F.2d 628, 630. The case does not, as claimed by appellant, fall within the rule that, where the facts are undisputed, and the case can be determined by a mere comparison of structures, and extrinsic evidence is not needed for purposes of explanation or to resolve questions of the application of descriptions to subject-matter, the question of infringement may be determined as a question of law. United States v. Esnault-Pelterie, 303 U.S. 26, 30, 58 S.Ct. 412, 414, 82 L.Ed. 625. Here, extrinsic evidence was needed and was received by the trial court in the form of affidavits of expert witnesses.

This evidence is conflicting. If the affidavits of appellees' experts are true, claim 13, as construed in the Dictograph Case, is infringed by each of appellant's devices. If the affidavits of appellant's experts are true, there is no such infringement. The trial court resolved the conflict in favor of appellees. We cannot say that this was error. Much less can we say that it was an abuse of discretion.

Order affirmed.