MOTOSHAVER, Inc., et al. v. SCHICK DRY
SHAVER, Inc., et al.
No. 8808.

Circuit Court of Appeals, Ninth Circuit.
Dec. 2, 1938.

Oscar A. Mellin, of Oakland, Cal., and Kenneth K. Wright, of Los Angeles, Cal., for appellants.

William Gibbs McAdoo, of Los Angeles, Cal., and Abraham Tulin, of New York City, for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order enjoining both appellants, pendente lite, from manufacturing, selling, advertising or offering for sale any shaving implement embodying the invention covered by patent No. 1,721,530[1] and, particularly, the implements called Motoshaver and Dual-Head Motoshaver.

Appellant Dalmo Manufacturing Company, a California corporation, hereinafter called Dalmo, contends (1) that the Southern District of California is not the proper venue of the suit against it and the court, without Dalmo's consent, cannot consider the charged infringement because it is not an inhabitant of that district, maintains no regular and established place of business there, and, (2) that service of process is-

suing from the District Court for the Southern District of California, served on it, a resident of the Northern District of California, in the Northern District of California, was not valid service. Hence, Dalmo contends, the denial of its motion to dismiss the bill and to quash the service is error.

If, contrary to these contentions, Dalmo be held a party, it makes common cause with appellant Motoshaver, Inc., a California corporation, hereinafter called Motoshaver, and both contend the court erred in ordering the injunction pendente lite. On the latter contention this case differs in no material respect from Nicholl, Inc., v. Schick Dry Shaver, 9 Cir., 98 F.2d 511.

**1. The suit as against Dalmo is brought without the proper venue in patent infringement cases.**

There is some confusion of the terms "jurisdiction of the subject matter", "jurisdiction of the person" and "venue" in the briefs and cases cited.

Every district court has jurisdiction of the subject matter of patent infringement and, if the defendant appear generally, the court has the power to adjudicate the charges against him. 28 U.S.C.A. § 41(7); General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 435, 53 S.Ct. 202, 77 L. Ed. 408. One of the questions here involved is of venue—that is, whether the Southern District of California is a place in which the suit can be maintained without the defendant's consent. If such a suit is brought against a defendant elsewhere than in the proper venue, he has a waivable privilege to cause its dismissal. Since he may waive the privilege, the suit may be filed in any court which has jurisdiction of the subject matter and the court has the power to retain it until the defendant asserts his privilege. General Electric Co. v. Marvel Rare Metals Co., supra; Lee v. Chesapeake & Ohio R. Co., 260 U.S. 653, 655, 43 S.Ct. 230, 67 L.Ed. 443, holding the word "brought" as used in the general venue section 51 of the Judicial Code (28 U.S.C.A. § 112) means not that the suit cannot be filed elsewhere than in the districts there specified, but that the court may not proceed to litigate it if the defendant claims his privilege. Though not brought in the proper venue, the court may issue its process and, if service is made on the defendant within the court's district, he waives the privilege if

---

[1] Patent No. 1,747,031, also alleged to have been infringed, is not here involved.

he does not assert it "before the expiration of the period allotted for entering a general appearance and challenging the merits". *Commercial Cas. Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177, 179, 180, 181, 49 S. Ct. 98, 99, 73 L.Ed. 252. It has been held of § 51 that whether or not served in the court's territorial jurisdiction, the defendant, if the suit is not brought in the proper venue, may compel dismissal of the complaint so far as it purports to affect him. *Camp v. Gress*, 250 U.S. 308, 311, 39 S.Ct. 478, 63 L.Ed. 997.

Concerning jurisdiction in personam, also asserted to have been acquired over Dalmo by service on it outside the Southern District of California, the Supreme Court points out its essential distinction from venue.

"In a civil suit in personam, jurisdiction over the defendant, as distinguished from venue, implies, among other things, either voluntary appearance by him or service of process upon him at a place where the officer serving it has authority to execute a writ of summons. * * *

"Section 51 of the Judicial Code is a general provision regulating venue. The part pertinent here is that, with certain inapplicable exceptions, 'no civil suit shall be brought in any District Court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant.' It is obvious that jurisdiction, in the sense of personal service within a district where suit has been brought, does not dispense with the necessity of proper venue. It is equally obvious that proper venue does not eliminate the requisite of personal jurisdiction over the defendant. * * *" *Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 623, 45 S.Ct. 621, 622, 69 L.Ed. 1119.

■ The bill, charging both appellants with acts of infringement of appellees' patent committed in the Southern District of California, was filed in the Southern District of California. On Dalmo's motion to dismiss the bill, because brought out of the proper venue, it established by uncontroverted affidavits that it is neither an inhabitant of nor has it a regular and established place of business in that district.

Because of these facts, Dalmo contends, correctly, that the district court for the Southern District of California is not the place to bring infringement charges against it.

Section 48 of the Judicial Code, 28 U. S.C.A. § 109, limits the venue in patent infringement suits against a non-inhabitant of the district to those districts in which the defendant "shall have committed acts of infringement and have a regular and established place of business". Section 48 is a codification of the Act of Congress of March 3, 1897, which reads:

"Chap. 395.—An Act Defining the jurisdiction of the United States circuit courts in cases brought for the infringement of letters patent.

"**Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,**

"That in suits brought for the infringement of letters patent the circuit courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpoena upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought.

"Approved, March 3, 1897." 29 Stat. pp. 695, 696.

■ The Supreme Court recognizes that § 48 is an enactment limiting a previous broader venue for non-inhabitant defendants in patent cases in any district court in which service on him gave jurisdiction in personam: "Section 24(7) of the Judicial Code (28 U.S.C.A. § 41(7) is the source from which District Courts derive jurisdiction of cases arising under the patent laws. Under that clause and until the enactment of section 48 a suit for infringement might have been maintained in any district in which jurisdiction of defendant could be obtained. *In re Hohorst*, 150 U.S. 653, 661, 14. S.Ct. 221, 37 L.Ed. 1211. And see *In re Keasbey & Mattison Co.*, 160 U. S. 221–230, 16 S.Ct. 273, 40 L.Ed. 402. Section 48 relates to venue. It confers upon defendants in patent cases a privilege in respect of the places in which suits may be maintained against them. And that privilege may be waived. *Lee v. Chesapeake & Ohio Ry. Co.*, 260 U.S. 653, 43 S.Ct. 230, 67

L.Ed. 443; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele [4 Cir.] 35 F.(2d) 433, 438. * * *". General Elec. Co. v. Marvel Rare Metals Co., 287 U.S. 430, 434, 435, 53 S.Ct. 202, 204, 77 L.Ed. 408.

This character of § 48 as limiting broader power in the court is held in the cases of Bowers v. Atlantic G. & P. Co., C.C. S. D. N.Y., 104 F. 887, 892, and Cheatham Electric Switching Device Co. v. Transit Dev. Co., C.C. E.D. N.Y., 191 F. 727. Cf. Westinghouse Air-Brake Co. v. Great Northern R. Co., 2 Cir., 88 F. 258, 262. In each case there was a dismissal of the cause as to the non-inhabitant defendant,—in the Bowers Case because, though having a regular and established place of business, it had not infringed in the district in which the suit was brought; and in the Cheatham Case because the non-inhabitant company, though infringing in the district of the suit, had no regular and established place of business there.

The district court's opinion does not consider any of these cases but, in denying Dalmo's motion to dismiss, follows Zell v. Erie Bronze Co., D.C. E.D. Pa., 273 F. 833, 837, 838. That case held that prior to the enactment of § 48 in 1897, suits against patent infringers could be brought only in districts in which they reside and hence in its provisions for suits against those not residents of the district, but who had a regular and established place of business and infringed in that district, there is a broadening of a narrower jurisdiction to entertain the suit without the consent of the defendant. The court reasons that, since it is an extending instead of a narrowing statute, that court does not regard it as a limitation on the prior enacted provision of § 52[2] of the Code which, it holds, applies to all civil suits not local in nature, including those for patent infringement, and permits a suit against the inhabitant of another district of the same state if it is a co-defendant with an inhabitant of the district in which the suit is brought.

Section 52 is a codification of § 740 of the Revised Statutes, which, in turn, was derived from the Act of May 4, 1858, c. 27, § 1, 11 Stat. 272, and the Act of Feb. 24, 1863, c. 54, § 9, 12 Stat. 662. Its statutory antecedents, therefore, were prior in time to the Act of Mar. 3, 1897, c. 395, 29 Stat. 695, which is codified in § 48 of the Judicial Code.

The court's reasoning in the Zell Case is stated (pages 837, 838): "* * * Had the act of 1897 been passed when infringers were suable in any district where found, the provision of the act limiting the venue to the district of the infringers and the district in which acts of infringement were committed and an office maintained, it might well be viewed as a restriction of the right of action against them. Inasmuch, however, as at the time the act was passed infringers could be sued only in the court of their own district, the addition of another court in which they were liable to process cannot be regarded as a restriction, but an extension, of the rights of the plaintiff, and sections 51 and 52 gave further relief to plaintiffs broadly in all cases."

The Zell Case was decided long before the Supreme Court's decision in the General Electric Case. The statement in the Zell Case that if prior to the Act of 1897, § 48 Judicial Code, infringers could have been sued in any district where found (for service), that Act might be viewed as a restriction of the venue is correct. And since the General Electric Case states they could have been so sued, we hold that the venue in patent cases is determined by § 48 and that § 52 does not enlarge it. The court erred in denying Dalmo's motion to dismiss the action as to it.

What is true with respect to § 52 as not enlarging the narrower venue of §

[2] Section 52 of the Judicial Code provides:

"When a State contains more than one district, every suit not of a local nature, in the district court thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the State, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides. The clerk issuing the duplicate writ shall indorse thereon that it is a true copy of a writ sued out of the court of the proper district; and such original and duplicate writs, when executed and returned into the office from which they issue, shall constitute and be proceeded on as one suit; and upon any judgment or decree rendered therein, execution may be issued, directed to the marshal of any district in the same State." 28 U.S.C.A. § 113.

48 is likewise true as to the acquisition of jurisdiction in personam by the service on Dalmo of process outside the Southern and in the Northern District of California. Section 52, if applicable, would confer jurisdiction to make such service, for Dalmo's brief admits its co-defendant is an inhabitant of the Southern District of California and it is an inhabitant of the Northern District of California.

The general rule is that United States district courts cannot issue process effective in other districts. "Under the general provisions of law, a United States District Court cannot issue process beyond the limits of the district. Harkness v. Hyde, 98 U.S. 476, 25 L.Ed. 237; Ex parte Graham, [Fed.Cas.No.5,657], 3 Wash. [C.C.] 456. And a defendant in a civil suit can be subjected to its jurisdiction in personam only by service within the district. Toland v. Sprague, 12 Pet. 300, 330, 9 L.Ed. 1093. Such was the general rule established by Judiciary Act Sept. 24, 1789, c. 20, § 11, 1 Stat. 73, 79, in accordance with the practice at the common law. Picquet v. Swan, Fed.Cas.No.11,134, 5 Mason 35, 39, et seq. And such has been the general rule ever since. Munter v. Weil Corset Co., 261 U.S. 276, 279, 43 S.Ct. 347, 67 L.Ed. 652. * *". Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 623, 45 S.Ct. 621, 623, 69 L.Ed. 1119.

The provisions for service in both § 48 and § 52 do no more than give effect to the venue provisions of each act. The determination of Dalmo's right to dismiss the suit because not brought in the proper district, if it does not make moot Dalmo's motion to quash the service made on it, requires the same decision in its favor. The provisions of § 52 for service in another district of the same state are no more applicable to Dalmo than are its venue provisions. Since § 48, though specifically providing for a service of process within the district, makes no provision for service outside its area, patent infringement cases are subject to the general rule, above considered, prohibiting such service.

**2. Motoshaver was properly enjoined pendente lite.**

The district court did not, as contended by Motoshaver, disregard the decision of the Circuit Court of Appeals for the Second Circuit in Schick Dry Shaver v. Dictograph Products Co., 2 Cir., 89 F.2d 643. The district court's opinion states:

" * * * The appellate court judges, in the [Dictograph Case], were unanimous on the issue of invention, but divided upon the scope that should be allowed to the claims of the patent, two holding the claims to have been narrowed by a British patent, No. 753, to Appleyard, issued in 1914, for improvements in shaving or hair cutting appliances, while the third Circuit Judge substantially opined that Schick was what Chief Justice Taft characterized in Eibel Co. v. Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523, as a meritorious improver in the nature of a pioneer inventor whose valid patent claims are entitled to liberal and broad treatment * * *.

"With great respect for the decision of a court of superior authority, we think that the controlling opinion in the [Dictograph Case] attributes to this foreign patent of 1914 too prominent a place in the art of producing a practical and successful dry shaving device. * * *

"But regardless of our own belief as to how much information or knowledge Appleyard contributed to the known art when Schick made the first commercially successful dry shaver, it is clear that under the decision [in the Dictograph Case] the defendants' devices are substantially dissimilar in construction, mode of operation, and results to the suggested shaving implement that is described in this British reference, and that the 'Motoshavers' are substantially identical with Schick's patent as it is interpreted by the controlling opinion [in the Dictograph Case] * * *.

"We conclude by holding that both types of defendants' devices, that is to say, the structures labeled 'Motoshaver' and the structures labeled 'Dual-Head Motoshaver' that are in evidence, have been clearly shown beyond reasonable doubt to infringe claims 1 and 13, respectively of patent No. 1,721,530 * * * and that complainants are entitled to a preliminary injunction * * *". 21 F.Supp. 723.

Thus, although the district court thought the claims in suit had been too narrowly construed in the Dictograph Case, nevertheless, for the purpose of the application for an injunction pendente lite, it accepted that construction as correct, as we do for the purpose of this appeal. Nicholl v. Schick Dry Shaver, supra. In this case, as in the Nicholl Case, the question of infringement was a question of fact. On that issue, the evidence was conflicting.

The court resolved the conflict in favor of appellees. In this we find no error, no abuse of discretion.

The order denying Dalmo's motion to quash and to dismiss is reversed and the motions are granted. The order for the injunction pendente lite is affirmed as to Motoshaver.

Reversed as to appellant Dalmo Manufacturing Company and affirmed as to appellant Motoshaver, Inc.