**MOTOSHAVER, Inc., v. SCHICK DRY SHAVER, Inc., et al.**

No. 9178.

Circuit Court of Appeals, Ninth Circuit.

June 10, 1940.

Rehearing Denied Aug. 19, 1940.

HEALY, Circuit Judge, dissenting.

———◆———

Oscar A. Mellin, of Oakland, Cal., and Kenneth K. Wright, of Los Angeles, Cal., for appellant.

William Gibbs McAdoo, of San Francisco, Cal., and Abraham Tulin and Reginald Hicks, both of New York City, for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

This is an appeal under § 129 of the Judicial Code, as amended, 28 U.S.C.A. § 227a, from a decree rendered in a suit in equity for the infringement of letters patent, the decree being final except for the ordering of an accounting.

The suit was brought by appellees, Schick Dry Shaver, Incorporated, Schick Industries, Limited, and Edises, Incorporated, against appellant, Motoshaver, Incorporated, and a codefendant, Dalmo Manufacturing Company (hereafter called Dalmo). The patents involved are Nos. 1,721,530, 1,747,031 and 1,757,978, issued to Jacob Schick on July 23, 1929, February 11, 1930, and May 13, 1930, respectively. The patents were assigned to and are now owned by Schick Industries, Limited, of which Schick Dry Shaver, Incorporated, is, in the United States, the sole licensee. Edises, Incorporated, is a sublicensee of Schick Dry Shaver, Incorporated. Appellant and Dalmo were alleged to have infringed the patents by manufacturing, using and selling devices called Dual Head Motoshavers. Defenses were that the patents were invalid, and that, if valid, they were not infringed.

Appellant and Dalmo were enjoined, pendente lite, from manufacturing, selling, advertising or offering for sale any shaving device embodying the claimed invention described in patent No. 1,721,530. Schick Dry Shaver v. Motoshaver, D. C., 21 F.Supp. 722. The order granting that injunction was affirmed as to appellant and reversed as to Dalmo. Motoshaver, Inc. v. Schick Dry Shaver, 9 Cir., 100 F.2d 236.

Upon final hearing, the District Court entered a decree, which, as to Dalmo, dismissed the suit for want of jurisdiction,[1] but, as to appellant, held that claims 1, 4, 13, 14, 15, 16 and 17 of patent No. 1,721,530, claim 1 of patent No. 1,747,031 and claim 1 of patent No. 1,757,978 were valid and infringed. The decree enjoined further infringement and ordered an accounting. Schick Dry Shaver v. Motoshaver, D. C., 25 F.Supp. 346. Appellant seeks reversal.

### Patent No. 1,721,530.

Claims 1, 4, 13, 14, 15, 16 and 17 of patent No. 1,721,530 were found to have been infringed by three devices (Exhibits 18, 23 and 24)[2] manufactured, used

---

[1] Following Motoshaver v. Schick Dry Shaver, supra.

[2] Each of these devices is called a Dual Head Motoshaver.

and sold by appellant. These claims read as follows:

"1. A shaving implement comprising a shearing plate of extreme thinness to rest against the skin, having an opening for the reception of hair, a cutter to travel across the opening to provide a shear cut with one edge of the opening, and means for holding the parts to insure the supporting of the plate against flexing by means of the cutter."

"4. A shaving implement comprising a movable cutter and a perforated shear plate supported against external pressure by the cutter and of extreme thinness whereby the shearing is done at substantially the surface of the skin."

"13. A shaving implement comprising a shear-plate with slots extending from side to side, a cutter under the plate and having teeth to co-operate with the edges of the slots in cutting, and means for operating the cutter transversely of the slots.

"14. A shaving implement comprising, in combination, a series of thin and narrow blades having outer surfaces adapted to lie against the surface of the skin while shaving, said blades being separated by slots of such width as to permit at least one hair to enter, said width being so proportioned in respect to the thin and narrow dimensions of said blades as to prevent the surface of the skin being shaved from extending above the rear surfaces of the blades when the blades contact the surface of the skin during a shaving operation, cutter means having shearing edges in contact with the rear surfaces of the blades, and means for operating said cutter means in relation to the blades.

"15. A shaving implement comprising, in combination, a series of closely spaced blades whose outer surfaces are applied to the skin during a shaving operation and whose rear surfaces have edges against which hair is cut close to the surface of the skin, the blades being spaced sufficiently to permit hair to enter therebetween but to exclude the passage of skin above the rear surfaces of the blades when the outer surfaces of the blades are applied to the skin and drawn thereover in a direction substantially continuous with the edges of the blades, cutter means having teeth bearing against the rear surfaces of the blades, and means to translate said cutter means whereby the shearing of hair between the blades and teeth is attained.

"16. A shaving implement comprising, in combination, a shear-plate having a series of closely spaced blades adapted to lie in contact with the skin and whose shearing edges are disposed in a direction substantially continuous with the direction of manipulation of the implement during a shaving operation, the blades of the shear-plate being relatively thin and of substantially the same cross-sectional area along their shearing lengths, cutter means having teeth bearing against the rear faces of the blades of the shear-plate and forming shearing edges co-operative with the shearing edges of said blades, and means to translate said cutter means in a direction lateral to the blades.

"17. A shaving implement comprising in combination, a shear-plate having a series of parallel spaced blades separated by slots open-ended on at least one side of the shear-plate, said slots being of such width as to accommodate hair and to maintain the surface of the skin being shaved from extending above the rear surfaces of said blades while permitting it to extend substantially to said rear surfaces along the lengths of said slots as the outer surface of the shear-plate is held flat against the skin, cutter means having edges contacting the rear surface of the shear-plate, and means to operate said cutter means in relation to the shear plate."

Each of these claims is for a shaving implement. The implement described in claim 1 has a "shearing plate." The one described in claim 4 has a "shear plate." Each of those described in claims 13, 16 and 17 has a "shear-plate." Each of those described in claims 14 and 15 has a series of "blades." These terms are not defined in the claims. Their meaning must be sought in the specification. The specification states:

"This invention relates to an improved shaving implement that has a shear plate that rests against the face and has a cutter operating under the plate to cut the hairs. The machine can be used for shaving without the use of lather.

"The invention comprises an implement in which the shearing action takes place practically on the surface of the skin as the shearing plate or its equivalent is extremely thin. The thin plate is held in place against flexing and collapsing under inward pressure by the cutter which is disposed inside the shearing plate to co-oper-

ate with it in shearing and to support it against flexing.

\* \* \*

"The implement or machine is constructed to shear close to the skin to accomplish a close shave and in order to do this I provide a very thin shear plate or its equivalent, this plate resting on the skin and having an opening or openings against the edge of which a cutter operates to cut the hair. The shear plate is so thin that it would collapse or flex under inward pressure and the cutter is therefore disposed in a way to support the shear-plate over its inner surface. \* \* \*"

From the foregoing it is clear that the patent uses the terms "shearing plate," "shear plate" and "shear-plate" interchangeably; that what the patent calls a shearing plate, shear plate or shear-plate is a plate which is so thin that it would collapse or flex under "inward pressure;" and that, as here used, the phrase "inward pressure" means ordinary shaving pressure, that is to say, such pressure as would ordinarily be exerted in using the implement referred to for its stated purpose, namely, for shaving. That being the sole purpose of the implement, there was no reason for mentioning, or providing support against, any other pressure. Hence, to be a shearing plate, shear plate or shear-plate, within the meaning of the patent, a plate must be so thin that it would collapse or flex under ordinary shaving pressure.

Also, to be a shearing plate, shear plate or shear-plate, within the meaning of the patent, the plate must have an opening or openings. It may have one opening or several. The opening or openings may be of any desired form. Accompanying the specification is a drawing of an implement which, the specification states, is an embodiment of the claimed invention. This implement has a shearing plate, shear plate or shear-plate which, as shown in the drawing, has many openings. These openings are parallel slots extending from side to side of the plate, cutting the plate into a series of parallel cross-strips which the specification calls blades. These are the only blades mentioned in the specification. Thus, what the patent calls a series of blades is merely a slotted shearing plate, shear plate or shear-plate—a plate which is so thin that it would collapse or flex under ordinary shaving pressure.

Each of appellant's devices has two plates, but none of them has a plate which is so thin that it would collapse or flex under ordinary shaving pressure. Hence, none of them has a shearing plate, shear plate, shear-plate or series of blades, within the meaning of the patent. Hence, none of them infringes any of the seven claims set forth above.

### Patent No. 1,747,031.

Claim 1 of patent No. 1,747,031 was found to have been infringed by two of appellant's devices (Exhibits 18 and 23). This claim reads as follows:

"1. A shaving machine having a hollow end piece with a series of teeth on one face, the teeth having small slots between them, pointed shoes on the ends of the teeth and cutter teeth in the hollow end piece passing under the first teeth to sever hair passing through the slots."

This machine, we observe, has "a hollow end piece with a series of teeth on one face." What are these "teeth"? The claim does not tell us, but the specification does. From the specification it is clear that the end piece referred to is a rectangular casing one face of which is cut by parallel slots into a series of cross-strips called teeth, which, the specification states, "are very thin and are not strong enough to shave unless supported." Thus, what the patent calls teeth on one face of the end piece are cross-strips thereof which are not strong enough to shave unless supported. Cross-strips which are strong enough to shave without being supported are not teeth, within the meaning of the patent.

Each of appellant's devices (Exhibits 18 and 23) has two hollow end pieces. Each end piece has one face which is cut by parallel slots into a series of cross-strips. These strips are very thin, but are strong enough to shave without being supported and, therefore, are not teeth, within the meaning of the patent. Hence, neither of appellant's devices infringes this claim.

### Patent No. 1,757,978.

Claim 1 of patent No. 1,757,978 was found to have been infringed by Exhibits 18 and 23. This claim reads as follows:

"1. A shaving machine comprising, in combination, a skin contacting plate of narrow width with alternate slots and blade extending widthwise of the plate, the plate being of thin metal, walls supporting the skin contacting plate at the ends of the blades, said walls having openings opposite

the slots whereby hair may enter said slots without substantial bending of the hair at the surface of the skin as the shaving implement is passed over the skin in a direction substantially parallel to the slots, cutter means including a plate in contact with the rear surface of the skin contacting plate and having alternate slots and teeth whereby hair in the slots is sheared as said cutter means is translated, and means to translate said cutter means."

This machine comprises, inter alia, blades and walls. What kind of blades or what kind of walls the claim refers to cannot be ascertained from the claim or from the specification. The specification does not mention any blade or blades. It mentions two kinds of walls—walls of a shaving head and walls of a cutter. Whether the walls referred to in the claim are walls of a shaving head, walls of a cutter or some other walls the claim does not say. Lacking this information, no one, however skilled in the art, could construct the machine which the claim purports to describe.

We conclude that, for failure to comply with § 4888 of the Revised Statutes, 35 U.S.C.A. § 33,[3] this claim is invalid.

Decree reversed.

DENMAN, Circuit Judge (concurring).

I concur, and disagree with the suggestion that there is novelty in the idea of a beard clipping mechanism which admits the cushioned skin through its slots so that the beard is clipped close to it and the skin not abrased.

The term Shaver as applied to the instruments here in question is a misnomer which has led to a confusion of terminology in brief and argument. These instruments no more shave than does a plumber's tin shears, and the hairs they clip are no more the product of shaving than the litter of tin trimmed for a flange around a pipe. They are small and compact devices clipping hair by applying the same mechanical principle as the beard and sheep's wool clippers of nearly a half century ago. One way of stating the question here is whether appellant's clippers do anything more novel for hair clipping than the more recent volume manufacture of tiny wrist watches does in the way of creating a patentable novelty over grandfather's ponderous pocket timepiece. If they do not, they are warranted by the art as developed prior to the Schick patents.

Certainly there is no novelty in a thin face plate. Thinness of a metal plate is a relative matter. Four or five decades ago, many of us wore beards which we clipped with hair clippers of various thinness or thickness of face plates. What certain styles of beards caused us to attempt to attain was a bare shadow of hair at the upper lobe of the ear, gradually increasing in thickness across the face and jaw with a downward protruding mass, having a variant trim from a Van Dyke point through a whiskbroom spread to the lower segment of a Jovian aureole. The egoistic urge to conform to style caused a general consideration of hair clipping devices and their plates, warranting judicial knowledge. There are exhibits of hair clippers with face plates varying in thinness upwards from less than one-sixty-fourth of an inch.

The gradual increase in volume of the facial portion of this sartorial product was accomplished by a series of face plates of this varying thinness, grooved to lead the hair to the shearing point. The thinnest face plate produced the hair shadow. We pressed it into our faces until, there is no doubt, it would have flexed had it not been supported by—that is, pressed against—the cutting plate. The thinnest face plate was thick enough not to admit the flesh to the cutter as it cushioned up into the grooves. It did not require the mechanical knowledge or scientific imagination of a village blacksmith, much less of a watchmaker, to recognize that there could be a plate thin enough to flex easily which would admit the skin in the clipper grooves

---

[3] "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. * * *"

to the point where the clip would be as close as a lathered shave. When we removed our beards and our razors were dull we wished we had such a thinner face plate for our clippers. With hand power it would have been slower than shaving, but it would have saved us appearing at the impending social engagement with cheeks inflamed from our rough shave.

There was then no home distribution of electrical power and hence no small motor driven utensils serving homely useful purposes, and hence no attempt to make a clipper that clipped clean. However, power driven sheep wool clippers came into use and the torn flesh of lambs, whose relatively tough skins cushioned into the shearing slots, made plain that there was a desired relationship between width of slot and thinness of the skin-contacting plate. Certainly there is no novelty in stating such a proper relationship to be the *objective* of a hair clipping device.

In this connection it should be noted that if the inventive discovery claimed to be patented here is contained in the description of a face plate just thin enough to admit the skin to the shearing point and no more, the Schick clippers in evidence do not conform to the claim. At the hearing here, on the offer of the Schick appellees, a demonstrative clip by a Schick clipper in evidence, of a design customarily sold and used, was made on a man with a heavy black beard. At the conclusion of the clip, the man appeared as he would with a lathered shave, but the content of the clipper was a *mixture of hair and white skin* which, when blown out, looked like a white powder. Whether the skin abrasion was quantitively the same as with a Gillette razor, is not relevant. If prevention of the clipper from shearing the skin is the novelty patented, anyone, without infringement, could make and sell this Schick device, which was offered as an embodiment of the Schick patents.

Assuming that a very flexible face plate which must be supported in the manner described in the Schick patent is a patentable advance on the hair clipper, I agree in holding that the face plate in appellant's clippers do not flex in a manner not anticipated by the hair clippers nor do they utilize a support described in the patent.

HEALY, Circuit Judge (dissenting).

I think the decree should be affirmed.

The claims of the first Schick patent, here involved, do not call for a flexible shearplate. Claim 1 describes a shaving implement comprising a shearplate "of extreme thinness", and means for holding the parts to insure the supporting of the plate against flexing by means of the cutter. Claim 4 provides for "a shearplate supported against external pressure by the cutter". Claims 13 to 17, inclusive, make no mention of flexibility.

It seems obvious that Schick's device would not operate successfully if the shearplate should actually collapse or substantially flex in use. Hence the patent provides for means to prevent a degree of flexing which might otherwise result from the extreme thinness of the shearplate. The purpose of having a thin shearplate was to permit of a close shave, not to allow flexing.

The novelty of the patented device is that, when the instrument is pressed against the face in shaving, the skin enters the slots in the shearplate to the point where the inner, or cutting, surface of the shearplate encounters the cutter underneath it. The latter is a series of parallel blades moving transversely of the slots in the shearplate. This principle is quite clearly developed in claims 13 to 17. These claims are quoted in the majority opinion and need not be repeated here. In the implement described, the skin actually enters the slots but does not pass above the rear surface of the shearplate, whereas the hairs do. Thus the cutting edge formed by the shearplate and the movable cutter underneath is practically flush with the skin, and a close shave results without laceration of the skin.

The specifications require a shearplate thin enough, in relation to the width of the slots, to produce this result. Whether such a shearplate would flex under the pressure of shaving would depend somewhat upon the length of the blades and upon the material of which the plate is made. While the specifications repeatedly refer to the matter of flexing, it seems plain that the references are intended to indicate flexing as a probable consequence of the thinness of the shearplate. Means are indicated in the patent to prevent this undesired flexing. I think the specifications are not fairly to be construed as requiring a shearplate which would collapse on pressure.

In any event, the invention is measured by the claims of the patent, not by the specifications. Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721. There are other claims, not here involved, which seem expressly to call for a shearplate thin enough to flex. Where a patent contains both broad and narrow claims and the suit is upon the former, the court will not regard them as limited by the narrower claims. Kennedy v. Trimble Nurseryland Furniture Co., 2 Cir., 99 F.2d 786, 788; Electric Machinery Mfg. Co. v. General Electric Co., 2 Cir., 88 F.2d 11, 16.

It seems to me that the novel device claimed in the Schick patent is described and the manner of using it indicated in terms of sufficient exactness to enable one "skilled in the art to make, construct, compound and use the same".